IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

ANDREKKIA ALEANDER                                                            PLAINTIFF

VS.                                                                       CASE NO. 4:13-CV-00256-MPM-JMV

MICHAEL KINGDOM, IN HIS INDIVIDUAL                                 DEFENDANTS
CAPACITY, THE CITY OF HOLLANDALE,
MISSISSIPPI, AND JANICE FORDE, CARL
DORSEY, AND ROBERT SWINT, ALL IN
THEIR INDIVIDUAL AND OFFICIAL
CAPACITIES

## MEMORANDUM OPINION

This matter comes before the court on defendants City of Hollandale, Janice Ford, Carl Dorsey, and Robert Swint's motion for summary judgment. Having reviewed the parties' arguments and relevant law the court is now ready to rule.

The plaintiff, Andrekkia Alexander, filed this suit after an encounter with Michael Kingdom, a police officer with the City of Hollandale. She alleges that while in a local store, Kingdom approached her, slapped her on the rear, and made a sexually suggestive statement to her. After telling Kingdom she would file a complaint, Kingdom said that it would not matter stating, "I run that over there."

The defendants now move for summary judgment arguing that they cannot be liable because Kingdom's actions were not taken under color of state law, there was no official municipal custom or policy, and the Mississippi Tort Claims Act bars the state law claims.

### Standard of Review

Summary judgment is appropriate when there is "no genuine issue of material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The facts and

evidence are taken in a light most favorable to the non-moving party. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 386 (5th Cir.2007).

A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Summary judgment is appropriate if "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant." *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir.1993). If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted.

## Discussion

As a threshold matter, the court must first determine whether Kingdom was acting under color of state law when he sexually harassed Alexander. Section 1983 imposes liability only on actions taken "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. The Supreme Court has explained that "under color of law means under pretense of law." *Screws v. United States,* 325 U.S. 91, 111, 65 S. Ct. 1031, 1040, 89 L. Ed. 1495 (1945). Actions by officers "in the ambit of their personal pursuits are excluded are generally excluded." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) (citing *Screws*, 325 U.S. at 111, 65 S. Ct. at 1031. That is not to say that actions taken in pursuit of private aims can never be considered under color of law; rather only when the officer "misuses or abuses his official power" and "there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties" will the state also be liable. *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002) (citing *United States v. Causey*, 185 F.3d 407, 415 (5th Cir. 1999)).

No single factor is determinative as to whether an officer is acting under color of state law at the time of the conduct, because "[t]here is no rigid formula for determining whether a state or local law official is acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006). An officer's duty status or his uniform are not dispositive. *See Bustos*, 599 F.3d at 464 ("Whether an officer is acting under color of state law does not depend on his on- or off-duty status at the time of the violation."); *David v. City and County of Denver*, 101F3d 1344, 1353 (10th Cir. 1996)("The under color of state law determination rarely depends on a single, easily identifiable fact, such as the officer's attire [or] the location of the act.") Rather, the court must examine the circumstances as a whole and determine whether, "the officer used his official power to facilitate his actions." *Bustos*, 599 F.3d at 465. An officer who does not use "his official power as a means to achieve his private aim" is not acting under color of state law. *Id.*; *see Martinez v. Colon*, 54 F.3d 980, 978 (1st Cir. 1995)("[T]here can be no pretense if the challenged conduct is not related in some meaningful way either to officer's governmental status or to the performance of his duties.")

Often this connection materializes when an officer is performing official duties, claims to be performing official duties, or using his service weapon. *See Mooneyhan v. Hawkins,* 129 F.3d 1264 (6th Circuit 1997)(compiling cases where officers were held to be acting under color of state law.)

Two Fifth Circuit cases exemplify the nexus required for an officers actions to be performed under color of state law. First, in *United States v. Tarpley*, a police officer lured a former lover of his wife to the officer's house and violently assaulted him. 945 F.2d 806, 808 (5th Cir. 1991). Tarpley, the officer, had his wife call the victim and invite him over. *Id.* Once the victim arrived, Tarpley attacked the man, beating him repeatedly with a pair of makeshift

3

weapons he had built at the police station. *Id.* During the assault Tarpley put his service pistol into the victim's mouth and told the victim that he should kill him and that he could because he was a police officer. *Id.* Tarpley then brought another officer from the police station in to confirm that Tarpley was a police officer and had previously shot people. The Fifth Circuit affirmed that the officer was acting under color of state law, as required by the statute he was convicted under. *Id.* at 809. One factor for the court was that the officer had claimed he had authority to kill the victim because he was an officer. *Id.* ("At several points during his assault of Vestal, he claimed to have special authority for his actions by virtue of his official status. He claimed that could kill Vestal because he was an officer of the law.") Another factor was the presence of a fellow officer. *Id*. As the Fifth Circuit later wrote, "because '[t]he presence of police and the air of official authority pervaded the entire incident,' we concluded that Tarpley acted under color of law." *Bustos*, 599 F.3d at 465.

The second case, *Bennett v. Pippin*, concerned a Texas sheriff found in violating of § 1983 after raping a suspect. 74 F.3d 578 (5th Cir. 1996). The sheriff in question was investigating a domestic violence dispute where a wife had shot and killed her husband. *Id.* at 583. The victim, after being questioned by the sheriff for several hours, went inside to fall asleep and awoke to the sheriff standing naked over her. *Id.* The victim protested, but sheriff stated that he could do what he wanted because he was the sheriff and stated "What are you complaining about? I could have you thrown in jail and sorted it out later." *Id*. In affirming the district court, the Fifth Circuit noted the sheriff had questioned the suspect for at least a half-hour before the rape. *Id*. Further, the sheriff had told the victim he could do as he pleased because he was the sheriff. The court held that the "explicit invocation of governmental authority constituted a real nexus between the duties of the Sheriff and the rape." *Id.*

Alexander alleges that while she and a friend were traveling to the Dollar General store to shop, Kingdom began following their car closely in his personal vehicle. Both cars parked at the store and Kingdom went inside, followed by Alexander shortly after. Once inside the store, Kingdom approached Alexander, who asked "why he was all on [the friend's] care like that?" Kingdom responded that he would be "all up on your tail like that" and slapped the plaintiff on the rear. After paying for her items, she exited the store and told Kingdom she would report him to the police. Kingdom responded that he did not care because "I run that over there (the police station.)"

In support of her argument Alexander first claims that a reasonable jury could conclude that at the time of the incident, Kingdom was wearing what could be considered a police uniform. "Several witnesses admitted that the BDU pants and a shirt, some even said a gray shirt as described by Ms. Alexander, could be worn on duty by officers as a uniform." Dkt. 53, Plaintiff's Memo. in Opp., at 26. The record reflects, however, only testimony from Alexander that Kingdom was wearing black pants and shirt that may have had a police logo or letters on it. Dkt. 44, Ex R, Dep. of Alexander, at 31-32. Alexander admits that Kingdom never showed a badge, nor did he have a gun. Kingdom never identified himself as a police officer, but Alexander knew him to be one.

Alexander's other evidence that Kingdom was acting under color of state law are his words. Alexander alleges that after Kingdom touched her, she finished shopping and exited to the parking lot where she told Kingdom she was going to file a complaint against him at the police department. Kingdom responded that he "ran" the police station and would face no consequences.

This court cannot say that Kingdom's actions were under color of state law because there is not the requisite nexus between Alexander, Kingdom's actions, and any official duty or authority. Kingdom was not on-duty at the time of the accident. While he was arguably in what could have been a police uniform, he showed no badge or weapon as the officers did in *Tarpley* or *Bennett*. Whereas in *Bennett*, the sheriff used his power to jail to coerce the victim, no evidence has shown that Kingdom used any official power he had as a police officer "as a means" or to "facilitate" the harassment. His purpose for being at the store was not to perform official police duties. Unlike Tarpley, he did not use a badge or service weapon to intimidate or coerce. He did not threaten to arrest Alexander, nor did he otherwise detain her. Certainly, Kingdom appeared to invoke his authority as an officer in an attempt to escape the consequences of his actions, as the officers did in *Tarpley* and *Bennett*. In those cases, however, the officers made the invocation as a precursor to or during the assault giving them a coercive or dominating effect. Kingdom made his invocation after the harassment had taken place and had no bearing on whether Alexander would submit to the harassment.

Prior complaints against Kingdom detail a history of actions that would fall under color of law. Unfortunately for the plaintiff, this is not one of them. Because Kingdom did not act under color of law, the city bears no liability for them and is entitled to dismissal. Because the court dismisses the claims over which it has original jurisdiction, the court declines to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c).

ACCORDINGLY, Defendants City of Hollandale, Janice Ford, Carl Dorsey, and Robert Swint's Motion for Summary Judgment [44] is GRANTED. A separate order to that effect shall issue this day.

This the 22nd day of April, 2015.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**